PETERSON v. THE WAYNE.

(*District Court, N. D. Illinois.* March 14, 1889.)

COLLISION—BETWEEN SAILING VESSELS—CONFLICTING THEORIES.

The libel for damages to the schooner P. by a collision while she was cruising around the entrance to Chicago harbor, waiting for daylight and a tug, charged that for some time before and at the time of the collision the wind was blowing strong from east-north-east, and the weather clear, so that the vessel's lights could be seen at least two miles away; that the schooner was on the starboard tack, close-hauled, with all hands on deck, in charge of the master, with a lookout forward and a seaman at the wheel; that a vessel's red light was reported over the starboard bow, and, as it approached without change in direction, a torch-light was shown, and repeated, but without change of course; that when the other vessel, which was the barge W., passed so that her red light appeared over the schooner's port bow, she suddenly changed her course, striking the schooner stem on, on the port bow, between the fore-rigging and the cat-head; that as the W. was sailing with wind free it was her duty to have kept out of the way. The answer denied these allegations, and charged that the wind was north-east; that the barge was heading south-west by south; that her crew discovered from her starboard side a torch-light on a vessel approaching her from her stern, and that the sails, as seen by the torchlight, appeared to be trimmed on the starboard side, and the vessel to be going in the same general direction as the W.; no side lights were seen on the schooner; that her course so converged to that of the W. as to cause her to run her jib-boom and bowsprit on her port bow against the W.'s starboard bow; and that it was the duty of the P. to have kept out of the way. The statements of the pleadings were supported by the testimony of the respective crews, but the crew of the W. admitted that they had no knowledge of the presence of the P. until they saw the torch-light. *Held,* that the proof from the P. was the most natural and consistent, and that the W. must be held liable for the damage.

In Admiralty. Libel for collision.

*Schuyler & Kremer,* for libelant.

*Robert Rae,* for respondent.

BLODGETT, J. In this case libelant, as owners of the schooner Phenix, seek to recover damages sustained by said schooner from a collision with the barge Wayne on the morning of November 24, 1887, on the waters of Lake Michigan, a few miles north-east of the entrance to Chicago harbor. The proof on the part of the libelant shows that the Phenix was bound on a voyage from Milwaukee to Chicago, and arrived at the entrance to Chicago harbor at about 12 o'clock midnight; that, instead of coming to anchor, she cruised around about the mouth of the harbor, waiting for daylight, and a tug to take her in. The libel charges that some time before and at the time of said collision the wind was blowing a strong breeze from the east-north-east, and the weather was clear enough so that vessel's lights could be seen at least two miles away; that for some time before and at the time of the collision the schooner was on the starboard tack, close-hauled; all hands were on deck, a lookout was stationed forward, and a seaman at the wheel, and the deck in charge of the master; and, while sailing along in this way, the lookout discovered and reported a vessel's red light over the schooner's starboard bow. This was closely watched, and, as it approached without apparent change of course,

the schooner's torch-light was shown in the direction in which the vessel was approaching. This signal was repeated several times, but without change of course. The other vessel, which proved to be the barge Wayne, approached, and when she had passed so that her red light appeared over the schooner's port bow she suddenly changed her course, struck the schooner stem on, on the port bow of the schooner, between the fore-rigging and the cat-head, broke in the side, passing across the Phenix's bow, and carried away the bowsprit, boom, cat-head, stays, and sails, whereby the Phenix immediately became water-logged, but, being loaded with lumber, floated, and drifted into the vicinity of the Chicago harbor. That up to and just before the said collision the barge Wayne was sailing with the wind free and over her quarter, and it was her duty to have kept out of the way of the Phenix, which, from the time the Wayne's light was sighted, was kept standing on her course, close-hauled, on the starboard tack. That said collision was caused by and through the fault and want of skill of those navigating the said barge, and from no fault on the part of those in charge of the schooner. The answer denies all negligence and want of skill on the part of those in charge of the Wayne; insists that the Wayne was properly managed, and her crew all on deck, and her lights properly placed; charges that the wind was north-east; insists that said barge, with her full complement of men, all on deck, was heading south-west by south, with the wind steady from the north-east, and had passed about half-way from Grosse Point to the entrance of Chicago harbor, and was about six miles off the land, when her crew discovered a torch-light on the schooner approaching her from her stern; that this torch-light was seen from the Wayne's starboard side, but no side lights were seen on the approaching craft; and that the sails of the schooner first disclosed by the torch-light seemed to be trimmed on the starboard side of the schooner; that the said schooner was going in the same general direction with that of the Wayne, but converging to the course of the Wayne in such a manner as to cause her to run her jib-boom and bowsprit on her port bow against the Wayne's starboard bow; that when the Phenix was first seen by the officers and crew of the Wayne she seemed to be slowly overtaking the Wayne, sailing between the Wayne and the land, apparently heading south by west, and the Wayne actually heading, by the compass, south-south-west by south, and having her port tacks-a-board; that the Wayne was running light at a very low rate of speed, not exceeding one and a half or two miles an hour; and that it was the duty of the Phenix to have kept away from the Wayne; and that the failure on the part of those in charge of the Phenix to do this was the cause of the collision; and that said collision was not caused through any fault or negligence on the part of those in charge of the Wayne.

It will be seen that these statements of the direction in which the two vessels were running, as made in the libel and answer, are directly and wholly at variance with each other; the libel charging that the Phenix was going on the starboard tack, close-hauled, and that her course was north by east, with the wind east-north-east, and that the Wayne's course was about south by west or south-west, when the Wayne's lights were

made on board the Phenix; while it is insisted by the answer that the Wayne's course was south-west by south, with the wind steady from the north-east, and that the Phenix, going in about the same direction, or perhaps a little to the westward of the Wayne's course, overtook the Wayne, and attempted to cross her bows, and, in doing so, struck the Phenix's port bow against the Wayne's starboard bow, thereby doing the injury complained of.

The only testimony in the record, material to the issues made in the case, is from the decks of the colliding vessels, and it is admitted that this testimony is wholly irreconcilable, and that it is impossible to accept the statements of these two crews and to harmonize them. The question, therefore, is, which of these two crews tells the most probable story as to the manner in which this collision occurred? The testimony from the Phenix comes from the master, mate, wheelsman, and steward, who were all on duty at the time the collision occurred, and for some time before it; the lookout of the Phenix not being called as a witness by either side. The testimony of these witnesses from the Phenix is consistent and apparently natural. All the witnesses, with the exception of the steward, who was not on deck, but stood in the companion-way, agree that the course of the Phenix was north by east; that she was proceeding at a slow rate of speed, not to exceed two or two and a half miles per hour; that the wind was east-north-east; that she was standing upon the starboard tack, close-hauled, when her lookout reported the red light, which proved to be that of the Wayne, a point or two on her starboard bow. Of course all this would indicate that the Wayne was on the port tack, and had the wind free. That very soon after the Wayne's red light was reported, a torch was shown from the schooner's starboard quarter in such a position that it ought to have been seen from the Wayne as she was then running; and that the showing of the torch was repeated three or four times before the collision occurred, the last being just before the two vessels came together. All the testimony from the Phenix also tends to show that her course was not changed, and that the Wayne, after passing so that her red light was seen upon the Phenix's port bow, suddenly changed her course, and struck the Phenix on the port bow, completely breaking in her port bow, carrying away her lights, and put her into a condition in which she was water-logged within a very few minutes. This testimony seems to me to be natural, and carries with it an appearance of probability. The schooner was not obliged to come to anchor and wait, lying at anchor, for a tug in the morning. It was entirely optional with her whether she would anchor or cruise around about the mouth of the harbor until morning, and if she adopted, as her master and crew say she did, the course of keeping under sail, the course in which she was running, in view of the direction and character of the wind, was a natural and proper one. The theory of the defense is that, as the Wayne was standing upon her course, the Phenix suddenly appeared upon her starboard side, showing a torch, and running in such a course as to cross the bows of the Wayne, but that a collision at that moment was inevitable; that from the course of the schooner, and the

way she was seen from the decks of the Wayne, her crew concluded that the Phenix was sailing in a south-westerly direction, her course being a little to the westward of the course of the Wayne; and that she was sailing much faster than the Wayne, and had overtaken the Wayne, and attempted to cross her bows, thereby bringing on the collision. This theory, if sustained by the proof, would of course show the Phenix clearly at fault. She would have had no right, under the circumstances, to attempt to cross the bows of the Wayne. She, according to respondent's testimony, had the wind free as well as the Wayne, and, if she wished to get to the windward of the Wayne, her duty was to have gone under the stern of the Wayne, instead of attempting to cross her bows. The master of the Phenix was a trained seaman, had spent the most of his life as a sailor, and must have known the folly and madness of the attempt he is charged with by the respondent. The only way in which I can in any degree explain the testimony of the witnesses for the Wayne is that they were inattentive in looking out for lights and signals, and when the proximity of the Phenix was discovered on board of the Wayne the wheel of the Wayne was suddenly put to starboard, and her bows swung rapidly to port, so that for an instant preceding the collision, and while the last torch was being shown, the two vessels seemed to be along-side of each other, the port side of the Phenix showing along the starboard side of the Wayne. All the witnesses on the Wayne admit that they had no knowledge or notice of the presence of the Phenix until just at the instant before the collision, when the torch-light was shown from the deck of the Phenix. At that moment, undoubtedly, the position of the two vessels was such as that, if the Wayne's wheel was put to starboard, they might hastily have assumed that the Phenix had approached them from the inside, or was attempting to cross their bows. Therefore, without further attempt to reconcile this contradictory testimony, I simply say that I accept the proof from the Phenix as being the most natural and consistent, and, in the light of that proof, find the Wayne must have been at fault, and liable for the damage incurred.